IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No.  03-466 |
| | ) |
| C.O. WORSTELL, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

# OPINION and ORDER OF COURT

### SYNOPSIS

Both parties in a prisoner civil rights suit against a prison corrections officer have filed Motions in Limine relating to such things as the admissibility of the Plaintiff-prisoner's criminal history and institutional misconducts and the prison corrections officer's suspension.  For the reasons set forth below, the Motions in Limine are granted in part and denied in part.

### OPINION

Plaintiff Keith Brown ("Brown") was incarcerated for a period of time at the State Correctional Institution at Greene ("SCI Greene").  Defendant Michael Worstell ("Worstell") was, at that same time, employed as a Correctional Officer by the Pennsylvania Department of Corrections at SCI Greene.  Brown has filed a civil rights

1

suit arising under 42 U.S.C. § 1983 for violations of his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. Specifically, he contends that on both September 29, 2001 and again on October 1, 2001, Worstell used excessive force in such a manner as to violate the Eighth Amendment.[1]

Both parties have filed multiple *Motions in Limine* in anticipation of trial. The Motions are disposed of as follows.

1. **"PLAINTIFF'S MOTION IN LIMINE # 1" - DOCKET NO. 212**

It appears as though Brown has received at least 75 "misconducts" during his current period of incarceration. The charges range from threatening an employee to indecent exposure. Brown contends that the misconducts are irrelevant to the matters at hand and, even if relevant, should be excluded under Rule 403. Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice... ." F.R.E. 403. Brown maintains that his "history of misconducts has no bearing on the violation-of-civil-rights proposition, will confuse the issues, and may provoke a jury's 'instinct to punish' while misleading it from its duty to find justice." See Docket No. 213, p. 3.

I agree with Brown that the evidence regarding the number of and nature of the overwhelming majority of misconducts would prove far more prejudicial than

---

[1] I note that in several of his motions in limine filings, Brown suggests that the only conduct at issue relates to the October 1, 2001 incident. Nevertheless, as the Complaint, the Amended Complaint and Amended Pretrial Statement all confirm that Brown seeks damages for violations of his Eighth Amendment right to be free from cruel and unusual punishment which allegedly occurred both on September 29, 2001 and October 1, 2001, I make my rulings accordingly.

2

probative. For instance, Worstell does not contend that he acted in a certain manner on either September 29, 2001 or October 1, 2001 because of a familiarity with Brown's apparent propensity for violence or disregard for authority while incarcerated. As such, the evidence simply is not relevant.

The misconducts which Brown received as a result of the September 29, 2001 incident causes me more pause.[2] Clearly, the parties have different versions of the way the incident played out. According to Worstell's Pretrial Statement:

> On September 29, 2001, Worstell was patrolling the unit in which Plaintiff was housed. Having overheard Plaintiff threaten a fellow inmate, Worstell attempted to intercede and approached Plaintiff's cell. Without provocation, through the "pie-slot" in his cell door, Plaintiff squirted a mixture of urine and feces on Worstell's face and body. Worstell received immediate medical attention.

See Docket No. 235, p. 2. Brown recounts a different version of events. According to Brown:

> On September 29, 2001, Worstell forcefully slammed a metal door (pie slot) closed on Brown's arm causing injury to Brown's arms. Worstell then threw a bucket of a liquid of unknown composition under the door of Brown's cell causing Brown to fall and sustain injuries.

See Docket No. 223, p. 2.

Worstell argues that Brown's receipt of a misconduct for his behavior during the exchange is relevant to evaluating Brown's credibility. See Docket No. 227, p. 3. He also argues that evidence of the misconduct is relevant because Brown claims

---

[2] Apparently Brown was found guilty of the misconducts of Assault and Refusing to Obey and Order. See Docket No. 213, p. 4.

3

damages for "emotional shock and distress" and "fear of future assaults by Corrections Officers." Worstell contends that the misconduct, which tends to show that on September 29, 2001, Brown was the aggressor, belies his claim that he fears attacks by corrections officers. Brown counters that the evidence is more prejudicial than probative under Rule 403 and should be excluded on this basis.

After careful consideration, I find that the probative effect of admitting evidence relating to misconducts Brown received as a result of the September 29, 2001 encounter outweighs any resulting prejudicial effect. Brown claims that Worstell violated his Eighth Amendment right to be free from cruel and unusual punishment on September 29, 2001. The parties have conflicting views on what actually happened on that day. As such, credibility is extremely important. Certainly, the misconducts call Brown's credibility into question. The fact that Brown was found to have been guilty of assault and refusing to obey an order contradicts his claim that Worstell attacked him unprovoked and also undermines his claim of fear of assault by corrections officers. Further, Brown claims to have sustained back injuries as a result of the September 29, 2001 encounter. The misconduct charges suggest that any injuries sustained were as a result of his own conduct, rather than as a result of Worstell's.

Consequently, Brown's Motion in Limine # 1 (Docket No. 212) is granted in part and denied in part. All evidence of misconducts other than those relating to the incident which occurred on September 29, 2001 is precluded.

**2.  "PLAINTIFF'S MOTION IN LIMINE # 2" - DOCKET NO. 214**

Brown has an extensive criminal history. The charges and convictions range from attempted homicide to aggravated assault. Brown seeks to preclude from trial any evidence relating to his criminal history. Rule 609(a) of the Federal Rules of Evidence governs this issue. Rule 609(a) provides:

(a) General Rule. For the purpose of attacking the credibility of a witness,

> (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and
> (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

F.R.E. 609(a). Having reviewed his record, I conclude that the crimes of which Brown was convicted do not involve dishonesty or false statement. Consequently, the criminal history is not admissible under Rule 609(a)(2).

Thus, under Rule 609(a)(1), the "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or cumulative evidence." F.R.E. 403. Several factors guide a court in comparing the probative and prejudicial value of the evidence:

> (1) the nature or impeachment value of the prior

>    conviction(s);
>    (2) the age of the conviction and the subsequent criminal history;
>    (3) the similarity between the prior conviction and the current charge;
>    (4) the importance of the witness's testimony; and
>    (5) the importance of the witness's credibility.

See Government of the Virgin Islands v. Bedford, 671 F.2d 758, 761 (3d Cir. 1982) and Miller v. Hoffman, Civ. No. 97-7987, 1999 WL 415402 at * 3 (E.D. Pa. June 22, 1999).

I find that, under the first factor, the impeachment value is low because crimes involving violence or aggression, such as those of which Brown was convicted, are not significantly associated with veracity. See United States v. Castor, 937 F. 2d 293, 294 (7th Cir. 1991), Robinson v. Clemons, Civ. No. 96-405, 1998 WL 151285 at * 3 (D. Del. March 24, 1998) and Marvel v. Snyder, Civ. No. 99-442, 2003 WL 22134838 at * 4 (D. Del. Sept. 9, 2003) (stating that the nature of the convictions - sexual assault - "while serious, and thus possibly probative of the plaintiff's disregard for the rules of society, is not necessarily probative of his veracity within the context of this action."). Thus, this factor weighs against admitting the evidence.

With respect to the second factor, the earliest crimes are old - dating from 1982. Yet he was convicted again and /or entered a guilty plea to charges filed in 1998 , 1999 and again in 2001. See Docket No. 215, p. 3-4. I find this factor weighs against admitting the evidence, as it suggests that Brown is a "career criminal." Indeed, it appears as though he has spent approximately half his life in jail. A jury confronted with such evidence may be more likely to conclude that Brown deserved the treatment he allegedly received from Worstell.

As to the third factor, there is some similarity between the prison convictions and the incidents at issue here. Both involve violence and aggressive behavior allegedly on Brown's part. This is prejudicial in the sense that a jury might conclude that, because Brown acted violently in the past, he may have acted violently on either or both September 29, 2001 and / or October 1, 2001. Consequently, this factor weighs against admitting the evidence.

With respect to the fourth factor, Brown's testimony is very important. His version of the events and the pain and suffering he alleges to have endured as a result of the events will be vital to establishing his claims. Consequently, "to debilitate him as a witness by disabling the jury from considering his testimony with an unbiased perspective would deprive him of his ability to present an effective case." Marvel, 2003 WL 22134838 at * 4. This factor weighs against admission of the evidence.

Because Brown's testimony is so vital to the case, his credibility is equally important. For that reason, the fifth factor weighs in favor of admitting the evidence.

Balancing the five factors as a whole, however, I find that the prejudice to Brown likely to occur if evidence concerning his criminal history is admitted substantially outweighs the probative value that such evidence would provide. I further find that a limiting instruction would be ineffective to cure such prejudice. Consequently, Worstell is precluded from referring to the details of Brown's prior convictions. See Marvel, 2003 WL 22134838 and Sedney v. Blot, Civ. No. 00-1302, 2003

WL 22839801 at * 1 (S.D. N.Y. Dec. 1, 2003) (granting a § 1983 prisoner's motion in limine because "the probative value of the details of Plaintiff's prior convictions is substantially outweighed with respect to the issue of credibility by the potential for unfair prejudice to Plaintiff arising from jury attention to the details of his criminal history, which includes attempted murder and statutory rape.").

**3.   "PLAINTIFF'S MOTION IN LIMINE # 3" - DOCKET NO. 216**

Brown will still be incarcerated at the time of trial. He has made arrangements with his family to secure civilian clothes. He asks this Court to permit him change into the civilian clothes each day before trial begins and to change back into prison clothes at the conclusion of each day. He also asks that he not be required to wear shackles at trial and that his incarcerated witnesses not be required to wear shackles at trial. He requests that he and his incarcerated witnesses be brought into the courtroom prior to the jury's entrance and that they remain in the courtroom until after the jury has exited. Finally, he asks that all Corrections Officers or Marshals who accompany Brown in and out of the courtroom be stationed in discrete and unobtrusive positions.

Worstell has not filed a response to this Motion and thus seemingly does not oppose the requests. I agree with Brown that a fair trial requires that he be permitted to wear civilian clothes during all trial proceedings. As such, he should be permitted time to change into civilian clothes prior to entering the courtroom each day and should be permitted to remain in those clothes until he has exited the courtroom at the conclusion of each day.

I also agree with Brown that neither he nor his witnesses shall appear in shackles while in the jury's view. Shackles could suggest to the jury that Brown and / or his witnesses are dangerous and violent. This would be unduly prejudicial.

Finally, as to the stationing of Corrections Officers or Marshals, I cannot, at this juncture, state where Marshals can or cannot sit. Brown is a convicted felon. He has a criminal history reflecting a violent and aggressive nature. The Marshals must, and will be, permitted to position themselves in such a manner as to best ensure the safety of all those present in the courtroom. I will not ask them to compromise on this point simply "to avoid the impression to the jury that Brown is a criminal or that he is in custody of law enforcement officials." see Docket No. 217, p. 5. Brown is in custody. The jury will certainly know that Brown has been in custody. As such, I believe that the prejudice to Brown is greatly outweighed by security and safety concerns. Nonetheless, I am certain that we can work with the Marshals prior to the commencement of the trial to determine the least obtrusive vantage point.

**4. "PLAINTIFF'S MOTION IN LIMINE # 4" - DOCKET NO. 218**

It appears from his Motion that Brown has been incarcerated for approximately twenty total years. During those years he has been housed at numerous State Correctional Institutions, at (at least) one County Jail and at (at least) one mental hospital. Within those institutions, Brown has been housed in special units, such as a restricted housing unit, a special needs unit and a forensic unit. He requests that the Court preclude evidence at trial relating to the length of his incarcerations, how many periods of incarceration he has had, any of the

institutions at which he has stayed (other than at SCI Greene during the period of September 29, 2001 through October 1, 2001), and the type of housing unit, level of custody or other restrictions upon his freedom that have been imposed.

I agree that, under the Rule 403 balancing test, the list of institutions at which Brown was housed is not particularly probative of the core judicial inquiry in this civil rights case. In contrast, listing those institutions, which would give the jury ample evidence from which to draw conclusions about how many times or how long Brown must have been incarcerated, would be highly prejudicial. As such, I find that the jury need only know that, between September 29, 2001 and October 1, 2001, Brown was housed at SCI Greene.

For the same reasons, I find that evidence of where Brown was housed within any particular institution is far more prejudicial than probative. Permitting Worstell to admit evidence that Brown has spent a significant period of time in restricted housing for instance, would be tantamount to letting in evidence concerning the dozens of misconducts which I've already determined should be excluded. Average jurors are intelligent enough to surmise that, if a prisoner is in a restricted housing unit, that prisoner likely is being punished for some behavior which occurred while incarcerated. That said, the parties can simply identify the cells in which the incidents occurred, by their block, pod and cell numbers (or whatever means of general identification SCI Greene uses).[3]

---

[3] Worstell argues that evidence of the type of housing unit, level of custody or other restrictions upon Brown's freedom should be admitted because "[t]he jury can not and should not be shielded from the totality of facts that make up the narrative that is this case." See Docket No. 237, p. 8. In particular, Worstell argues that he intends to present the testimony of Lieutenant

10

By excluding evidence of where Brown was housed, however, I in no way intend to exclude evidence relating to Brown's medical records. By claiming injuries to his back as a result of the September 29, 2001 and October 1, 2001 encounters, Brown has placed the issue of his past medical history - at least as it relates to the injuries allegedly sustained here - squarely at issue. Worstell must be permitted a full and fair opportunity to explore Brown's past medical history and any treatment he received relating to the conditions of which he now complains. For instance, if Brown's medical records indicate he ever complained of, and / or was treated for, back injuries prior to September 29, 2001, such records would be admissible. Care could be taken to minimize any resulting prejudice by redacting information regarding the institution at which he received such care and the dates on which he received such care.[4]

## 5. DEFENDANT'S MOTION IN LIMINE RE: MENTAL INJURIES - DOCKET NO. 222

Brown apparently intends to present evidence at trial that he suffered "emotional shock and distress" as well as "fear of future assaults by Corrections Officers" as a result of the encounters with Worstell on September 29, 2001 and on

---

Robert Frank and Officer Allen Lynch, both of whom apparently personally observed Brown following the incident in question and who had discussions with him. Id, p. 9-10. Certainly, my ruling does not prevent the admission of such evidence. Further, Frank and Lynch can testify as to why they were able to see Brown, i.e., he exercised in an enclosed area and was closely supervised. I simply find that nobody needs to identify the type of housing as "restricted" or "solitary" or something similar.

[4] Worstell argues that "it is necessary that the context surrounding the medical treatment contained in the records - including when and where the treatment was provided - be addressed." See Docket No. 237, p. 7. Worstell has failed to present any compelling reason explaining why the location of the treatment is necessary to understand the context. Further, as to "when" the treatment was rendered, Worstell can simply elicit information that the treatment predated the September 29, 2001 incident.

October 1, 2001. Worstell seeks exclusion of this evidence. More particularly, Worstell insists that such evidence is not admissible because Brown has not obtained an expert report regarding any mental or emotional injuries.

Worstell cites to Rule 701 of the Federal Rules of Evidence in support of excluding the testimony. Rule 701 states:

> If a witness is not testifying as an expert, the witness' testimony in the form of opinions is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

F.R.E. 702. Worstell contends that "[f]or a jury to be permitted to consider future pain and suffering as an element of damages, competent expert testimony demonstrating a likelihood that the condition will persist in the future must be present, and the jury must reasonably be able to infer from this testimony the probable future consequences of the condition." See Docket No. 223, p. 2, citing, Fretts v. Pavetti, 282 Pa. Super. 166, 422 A.2d 881 (1980), citing, Baccare v. Mennella, 246 Pa. Super. 53, 369 A.2d 806 (1976).

I disagree with Worstell. First, the cases to which he cites are state cases and do not address the application of Federal Rule of Evidence of 701, upon which Worstell relies for the exclusion of the evidence. Further, I find that Brown's testimony will qualify as admissible lay testimony. Certainly Brown's testimony concerning the encounters with Worstell would be based on first-hand knowledge. So too would Brown's testimony of how he felt after the encounter. Brown has

12

more than a reasonable basis grounded in experience to testify as to the mental and emotional injuries he suffered following the two encounters. See Chladek v. Milligan, Civ. No. 97-355, 1998 WL 334699 at * 3 (E.D. Pa. June 23, 1998) (denying a motion in limine to preclude plaintiff from testifying about his mental injuries as a result of a beating, even where there was no expert report, and stating that "[t]o the extent that Michael Chladek offers his opinion with regard to the extent and the causation of his [mental and physical] injuries, that opinion is permissible under Rule 701, so long as it is based on his first-hand knowledge and observation and is helpful to the jury."); Frazier v. Indiana Dept. Of Labor, No. 1-198, 2003 WL 21254567 at * 2-3 (S.D. Ind. March 24, 2003) (permitting a plaintiff to testify about emotional distress and mental anguish he attributed to the defendant's conduct); Harms v. Laboratory Corporation of America, 155 F. Supp.2d 891, 899 (N.D. Ill. 2001) (stating that "[a]lthough there is no expert testimony or evidence pertaining to Harm's emotional injuries, the court finds that Harms herself is capable of testifying to her own emotional state, providing she reasonably and sufficiently explains the circumstances of the injury.").

Consequently, the Motion is denied.

### 6. MOTION TO EXCLUDE EVIDENCE OF SUSPENSION - DOCKET NO. 224

Worstell apparently concedes that, on October 1, 2001, he placed a fire hose located on the wall near Brown's cell through the pie-slot in Brown's cell and turned on the power. The Department of Corrections brought disciplinary charges against Worstell for alleged violations of numerous departmental policies based upon the October 1, 2001 incident. Worstell was ultimately adjudged to have violated

provisions of the Department's Code of Ethics and received a five day suspension. Worstell seeks the exclusion of this evidence, arguing that under Rule 403, a violation of department policy has no bearing on the issues raised by Brown and would be unduly prejudicial.

In a recently filed Motion to Extend Time, (Docket No. 240), Brown requested the opportunity to respond to Worstell's request to exclude this evidence. Brown requested a period of fifteen days within which to respond. As trial commences in less than fourteen days, however, I cannot grant such a lengthy extension. Mindful of the fact that Brown is incarcerated and mail to and from him may be slow, it is my intention to permit Brown the opportunity to argue in opposition to this Motion before the commencement of trial. I will hold in abeyance any ruling on this Motion until that time.

## 7. <u>DEFENDANT'S MOTION IN LIMINE RE: MISCONDUCTS AND CRIMINAL HISTORY - DOCKET NO. 226</u>

Finally, Worstell asks this Court to allow evidence of Brown's institutional misconducts and criminal history. For the reasons set forth above with respect to Brown's corresponding Motions (Docket Nos. 212 and 214) the Motion is granted in part and denied in part. Evidence of Brown's criminal history is excluded in its entirety as is all evidence of institutional misconducts save for those meted out as a result of the September 29, 2001 incident.

<u>\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*</u>

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 03-466 |
| | ) |
| C.O. WORSTELL, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## **ORDER OF COURT**

AND NOW, this **28th** day of July, 2005, after careful consideration, and for the reasons set forth in the accompanying Opinion, the Motions in Limine are disposed of as follows:

1. Plaintiff's Motion #1 - Docket No. 212 - Granted in part and denied in part. Granted insofar as evidence relating to all of Plaintiff's institutional misconducts other than those addressed below, shall be precluded from trial. Denied insofar as evidence of the misconducts Plaintiff received as a result of the September 29, 2001 incident is admissible.

2. Plaintiff's Motion # 2 - Docket No. 214 - Granted. No evidence regarding Plaintiff's criminal history shall be admitted.

3. Plaintiff's Motion # 3 - Docket No. 216 - Granted in part and denied in part. It is granted insofar as Plaintiff shall be permitted to wear civilian clothes during

15

trial; he shall not appear in shackles during trial, nor shall his witnesses. The Motion is denied insofar as it seeks to place the Marshals in particular places in order to avoid the impression in front of the jury that Plaintiff is incarcerated. This Court will not restrict the movement of the Marshals to the risk of safety in the Courtroom.

4. Plaintiff's Motion # 4 - Docket No. 218 - Granted in part and denied in part. The Motion is granted insofar as evidence relating to the particular institutions in which Plaintiff has been housed over the years is inadmissible (save for his being located at SCI Greene during the relevant period of time) as is the type of housing he has been placed in at each such institution. Denied insofar as the Motion seeks to preclude Defendant from introducing at trial evidence regarding relevant medical records concerning Plaintiff from those institutions - any information regarding the location and date can be redacted prior to submission into evidence. The Motion is also denied to the extent that it may have sought to preclude Defendant from eliciting testimony from witnesses regarding their ability to watch Plaintiff's behavior after the incidents in question. While the witnesses need not identify the housing as "restricted," they can discuss the restrictions placed upon Plaintiff's movement which thereby allowed them to make the relevant observations.

5. Defendant's Motion Re: Mental Injuries - Docket No. 222
Denied. Plaintiff is permitted to testify, as a lay witness under Rule 701 of the Federal Rules of Evidence, to any mental and emotional injuries he sustained as a result of the two encounters.

6. Defendant's Motion Re: Evidence of Suspension - Docket No. 224

Ruling held in abeyance until Brown is given the opportunity to respond, in Court, prior to the commencement of trial.

7. Defendant's Motion Re: Misconducts and Criminal History - Docket No. 226 - Granted in part and denied in part for the reasons set forth in connection with Docket Nos. 212 and 214.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge